FILED by BJ D.C.
ELECTRONIC
Oct. 6, 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA

## 09-61596-CIV-COHN/SELTZER

CASE NO:

LUCY MAYORGA, individually, ADRIANA
MORAVCIK and MILAN MORAVCIK,
individually, and as wife and husband,

           Plaintiffs,

vs.

AIRBUS S.A.S., a foreign corporation, and AIRBUS
INDUSTRIE G.I.E., a foreign corporation,

           Defendant.

_____/

## COMPLAINT

Plaintiffs, LUCY MAYORGA, ADRIANA MORAVCIK, and MILAN MORAVCIK sue AIRBUS S.A.S. ("AIRBUS") and AIRBUS INDUSTRIE G.I.E., and state as follows:

1. At all times material, Plaintiff, LUCY MAYORGA, was and is a citizen of the State of New York.

2. At all times material, Plaintiff, ADRIANA MORAVCIK, was and is a citizen of the State of New York

3. At all times material, Plaintiff, MILAN MORAVCIK, was and is a citizen of the State of New York and married to ADRIANA MORAVCIK.

4. At all times material, Defendants, AIRBUS S.A.S and AIRBUS INDUSTRIE G.I.E. (collectively "AIRBUS") were and are French corporations having their principal place of

business in Toulouse, France. AIRBUS has in the past and continues to engage in substantial and non-isolated business activity on a continuous and systematic basis in the United States and Florida.

 a. AIRBUS maintains a North American headquarters in Herndon, Virginia and numerous offices throughout the United States including engineering centers in Mobile, Alabama and Wichita, Kansas.

 b. In the State of Florida, AIRBUS owns and operates Airbus Americas Sales, Inc., a Delaware corporation that holds a principal address in Miami, Florida. The purpose of Airbus Americas Sales, Inc., is to sell AIRBUS aircraft in the State of Florida.

 c. Moreover, AIRBUS owns Airbus North America Customer Services, Inc., a Delaware corporation that also holds a principal address in Miami, Florida.

 d. Further, AIRBUS owns and operates one of only three world wide training facilities in Miami, Florida. The Miami facility provides training for the flight crew, cabin crew, and maintenance personnel that operate and maintain AIRBUS aircraft. At the facility, approximately 4,000 trainees take AIRBUS courses annually under the direction of nearly 100 Airbus employees.

 e. Additionally, AIRBUS operates a Customer Support Center in Fort Lauderdale, Florida, where it provides on-site technical assistance and helps solve in-service problems.

5. AIRBUS manufactured the subject Airbus A319-112 aircraft - serial number 1297, FAA Registration Number N746UW.

6. On or before October 8, 2005, AIRBUS was involved in the design, engineering, manufacturing, assembly, testing, marketing, distributing and/or selling of the subject Airbus A319-112 jet aircraft.

7. AIRBUS is the Type Certificate holder for the A319 product line.

8. AIRBUS, at all times material hereto, assumed all responsibility for providing inspection, repair, service, maintenance, replacement, overhaul, warnings, parts, instructions, maintenance manuals, continuing airworthiness information, and other information with respect to the Airbus A319-112 jet aircraft.

9. AIRBUS transacted business in multiple counties in Florida, including, but not limited to Broward, Miami-Dade, and Orange County at the time the cause of action arose.

10. LUCY MAYORGA'S and ADRIANA MORAVCIK'S injuries occurred in Fort Lauderdale, Florida.

## JURISDICTION AND VENUE

11. The jurisdiction of this Court is based upon diversity of citizenship pursuant to 28 U.S.C. §1332. The matter in controversy exclusive of interest and costs exceeds the sum of Seventy Five Thousand Dollars ($75,000.00).

12. AIRBUS is subject to personal jurisdiction under section 48.193, Florida Statutes.

13. Plaintiffs' causes of action arise out of AIRBUS engaging in one or more of the following acts within the State of Florida:

    a. Operating, conducting, engaging in, or carrying on a business or business venture in Florida or having an office or agency in the State of Florida

    b. Committing a tortious act within the State of Florida.

    c. Causing injury to persons or property within the State of Florida arising out of an act or omission by AIRBUS outside Florida because at or about the time of the injury, AIRBUS was either:

        i. Engaged in solicitation or service activities within Florida; or

        ii. Products, materials, or things processed, serviced, or manufactured by AIRBUS anywhere were used or consumed within Florida in the ordinary course of commerce, trade, or use.

14. AIRBUS is engaged in substantial and not isolated activity within the State of Florida including, but not limited to, owning and operating multiple corporations, transacting business, soliciting business, deriving revenue, contracting to supply goods or services and providing goods and services in Florida.

15. AIRBUS has sufficient minimum contacts with the State of Florida:

    a. AIRBUS purposefully directs its activities at residents of the State of Florida and purposefully conducts activities within the State of Florida, thereby invoking the benefits and protections of the laws of Florida;

    b. Plaintiffs' injuries and causes of action arise from and/or relate to AIRBUS' activities within the State of Florida;

    c. AIRBUS' activities with the State of Florida are such that AIRBUS expects or should reasonably anticipate being haled into court in Florida.

16. Venue of this action properly lies in the United States District Court for the Southern District of Florida under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in or near Fort Lauderdale, Florida.

**GENERAL ALLEGATIONS**

17. On October 8, 2005, LUCY MAYORGA and ADRIANA MORAVCIK were working as flight attendants aboard an Airbus A319-112 aircraft, FAA registration No. N746UW operated as U.S. Airways Flight #955 from Philadelphia International Airport ("Philadelphia") to Fort Lauderdale-Hollywood International Airport ("Fort Lauderdale").

18. While onboard, LUCY MAYORGA and ADRIANA MORAVCIK were exposed to toxic fumes that entered the passenger cabin through the air delivery system. The toxic fumes entered the passenger cabin through the air delivery system as a result of the product defect as alleged herein. The "product" for purposes of this Complaint is the Airbus A319-112 aircraft and its component parts.

19. Bleed air is the outside air fraction of the cabin supply air that is first compressed in the aircraft engines or Auxiliary Power Unit and which, as a result of the product defect alleged herein, is prone to contamination with high-temperature engine oil and hydraulic fluid, and their byproducts, under normal operating conditions.

20. These airborne toxins were not removed from the bleed air before the air was supplied to the passenger cabin for the flight attendants and passengers to breathe.

21. During and after takeoff, LUCY MAYORGA and ADRIANA MORAVCIK noticed a strong odor characterized as "dirty socks" and "chemicals" in the cabin. ADRIANA MORAVCIK reported it to the pilots. One of the pilots told ADRIANA MORAVCIK that there was a strong odor in the flight deck as well, but that he was "opening some vents" and expected it to clear.

22. During climb out, the odor was still very strong and ADRIANA MORAVCIK'S eyes began to water and her throat became tight.

23. During cruise, LUCY MAYORGA reported upper respiratory irritation, headache, and difficulty in taking a full breath.

24. Fearing an electrical fire, LUCY MAYORGA recommended to the lead flight attendant that the flight attendants prepare the cabin for landing as soon as possible. LUCY MAYORGA then called the pilots on the intercom system to tell them that she was having difficulty breathing. When she called, she could tell that the pilots were breathing through oxygen masks, presumably due to the air conditions in the flight deck. The pilots made the decision to institute an emergency landing in Fort Lauderdale, Florida.

25. Before final descent, the odor intensified once again. LUCY MAYORGA and ADRIANA MORAVCIK were seated in the rear of the aircraft and noticed a visible smoke/haze in addition to the odor.

26. During the final descent, LUCY MAYORGA felt as if she could not breathe. She doubled over in pain and slumped into her jumpseat at the front of the aircraft prematurely. Her head was pounding and her eyes and throat felt like they were burning badly. ADRIANA MORAVCIK felt fatigued, had a severe headache, and could not take a full breath.

27. Upon landing in Fort Lauderdale, Florida, concurrent with their exposure to the contaminated bleed air, LUCY MAYORGA'S and ADRIANA MORAVCIK'S throats became tight, they felt fatigued, and they both described painful head and/or body aches. Also, LUCY MAYORGA'S arms and hands were shaking. ADRIANA MORAVCIK'S throat felt as if it was closing, her lower lip, tongue and one of her arms felt numb. She had a bad cough and headache, and was later unable to fall asleep.

28. That night, LUCY MAYORGA suffered a severe headache, a wheezing cough, a stomach ache, and difficulty sleeping. Also, she could not control her body from shaking. ADRIANA

MORAVCIK continued to feel numbness in her lower lip, tongue, and one of her arms. She had ongoing coughing attacks, chest pain, and a bad headache.

29. The next morning LUCY MAYORGA and ADRIANA MORAVCIK suffered severe headaches and difficulty breathing. The left side of LUCY MAYORGA'S face was numb, her ears were ringing, and her eyes, nose, and throat were burning. ADRIANA MORAVCIK continued to feel numbness in her lower lip, tongue, and arm.

30. That morning LUCY MAYROGA, ADRIANA MORAVCIK, and the lead flight attendant went to the North Ridge Medical Center in Forth Lauderdale, Florida. The doctors diagnosed each of the flight attendants with an "inhalation injury." They gave ADRIANA MORAVCIK an intramuscular injection of Toradol (pain medicine). They prescribed a corticosteroid inhaler for LUCY MAYROGA and ADRIANA MORAVCIK.

31. Over the course of the next several days, LUCY MAYORGA developed coughing spasms and a painful unremitting headache.

32. Over the course of the next several days, ADRIANA MORAVCIK developed coughing spasms, headaches, numbness, insomnia, memory problems and concentration problems. Her symptoms continued to worsen.

33. Over the course of the next several weeks, both LUCY MAYORGA'S and ADRIANA MORAVCIK'S physical ailments persisted and continued to worsen including, but not limited to, headaches, joint aches, body aches, loss of sensation to certain body parts, exhaustion, and difficulty concentrating, chest pain, abdominal pain, gastrointestinal upset, short-term memory loss, depression and anxiety.

34. As a result of their exposure to contaminated bleed air on the subject aircraft, LUCY MAYORGA and ADRIANA MORAVCIK have suffered and continue to suffer severe

physical and emotional injuries, including but not limited to trouble breathing, coughing and bronchial-spasms, sore throat and shortness of breath, depression, insomnia, gastrointestinal distress, chronic migraines, nausea, fatigue, neurological impairment, cognitive deficiencies and central and peripheral nervous system damage including memory loss, speech impairment, dizziness, weakness, disorientation, loss of balance, vision impairment, blurred vision, blocked vision, uncontrollable tremors, and numbness and tingling in their hands, arms, shoulders and feet.

35. LUCY MAYORGA has been unable to return to work as a result of her symptoms and illness. Her doctors attribute her symptoms and illness to her industrial workplace exposure to toxic substances on board the subject aircraft.

36. ADRIANA MORAVCIK has been unable to return to work as a result of her symptoms and illness. Her doctors attribute her symptoms and illness to her industrial workplace exposure to toxic substances on board the subject aircraft.

37. Bleed air can contain airborne tricresyl phosphates, other chemicals, and combustion byproducts.

38. Tricresyl phosphates are anti-wearing agents that are added to all jet engine oils used on all jet propelled commercial airliners in the United States.

39. Tricresyl phosphates are known neurotoxins, i.e. nerve agents. A neurotoxin or nerve agent is a toxin that acts specifically on nerve cells of the central and peripheral nervous systems.

40. Tricresyl phosphates are organophosphates.

41. Organophosphates are chemical compounds used in insecticides, herbicides, pesticides, nerve agents and nerve gases, all sharing a similar chemical structure. Organophosphates, as a family of chemicals, are considered toxic to human health.

42. AIRBUS approved the use of British Petroleum 2380 jet engine oil on the A319 series aircraft engine and APU, including that of the subject aircraft,

43. The Material Safety Data Sheet for British Petroleum 2380 warns the user that "[t]oxic fumes may be evolved on burning or exposure to heat." It further warns that "incomplete combustion will generate smoke, carbon dioxide, and hazardous gases, including carbon monoxide and oxides of sulfur, nitrogen, and phosphorus," and exposure to the product "may be harmful by inhalation if exposure to vapor, mists, or fumes, resulting from thermal decomposition occurs."

44. The typical consumer of AIRBUS' products does not expect, when using the product as designed, to be exposed to tricresyl phosphates, other chemicals, or combustion byproducts, and to be potentially inflicted with permanent disability, life altering central and peripheral nervous system damage, chronic migraines, tremors, cognitive deficits, gastrointestinal distress, nausea, vision impairment, fatigue, significant and traumatic emotional and mental stress and depression or other related symptoms.

45. AIRBUS, at all material times hereto, has known about the risks of bleed air contamination.

46. AIRBUS has not, to date, retrofitted their products with either sensors or recirculated air filtration systems designed to detect and/or eliminate and/or minimize vaporized and/or pyrolyzed engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances under normal operations.

## COUNT I-NEGLIGENCE

47. Plaintiffs hereby allege and incorporate paragraphs 1 - 46 above, by reference herein.

48. AIRBUS had a duty to use reasonable care in the design, development, manufacture, assembly, testing, marketing, distribution, sale and placement into the stream of commerce the subject aircraft so as to avoid exposing Plaintiffs to unreasonable and unnecessary risks.

49. AIRBUS breached its duty of care in one or more of the following ways:

   a. AIRBUS failed to adequately and sufficiently design the subject aircraft's environmental control system, bleed air system, air delivery system, recirculated air filtration system, and ventilation system in that the systems allowed air contaminated with hazardous substances, including vaporized and/or pyrolyzed engine oil and/or hydraulic fluid to enter the breathing zone within the subject aircraft under normal operating conditions and without detection or recirculated air filtration system.

   b. AIRBUS failed to adequately warn ultimate users such as, and including, the Plaintiffs, regarding the potential hazards of the environmental control system, bleed air system, air delivery system, recirculated air filtration system, and ventilation system.

   c. AIRBUS knew or should have known about the potential for its environmental control system, bleed air system, air delivery system, recirculated air filtration system, and ventilation system to be contaminated with vaporized and/or pyrolyzed engine oil and/or hydraulic fluid and its byproducts and/or other toxic substances under normal operations and AIRBUS failed to issue adequate warnings or instructions concerning this danger.

   d. AIRBUS knew or should have known about the potential adverse health consequences associated with exposure to contaminated bleed air and failed to issue adequate warnings or instructions concerning the risks posed to passenger and flight crew health and safety.

   e. AIRBUS knew or should have known about the dangers associated with its environmental control system, bleed air system, air delivery system, recirculated air

      filtration system, and ventilation system and failed to retrofit and/or modify and/or redesign these systems to prevent or minimize the dangers of exposure to contaminated bleed air.

  f.  AIRBUS failed to place and/or recommend the placement of a filter or filters on the subject aircraft to prevent or minimize the danger of exposure to contaminated bleed air.

  g.  AIRBUS failed to provide instructions to adequately remedy the problem or prevent recirculated gaseous contaminants from reentering the breathing zone within the passenger cabin or to prevent other fume events.

  h.  AIRBUS failed to equip its product with a contamination-detection system, sensors, filter or filters to detect, reduce and/or eliminate the danger of exposure to contaminated air.

  i.  AIRBUS failed to construct the subject aircraft in a reasonably safe condition and the subject aircraft did not conform to AIRBUS' express or implied warranties.

  j.  AIRBUS failed to follow established industry standards.

  k.  AIRBUS failed to use adequate construction methods.

  l.  AIRBUS failed to maintain adequate quality control during manufacture.

  m.  AIRBUS failed to adequately test and maintain complete test records.

  n.  AIRBUS failed to correct the weaknesses and defects revealed by testing.

  o.  AIRBUS designed, tested, manufactured, inspected and maintained the aircraft in such a negligent manner that the subject aircraft was likely to expose Plaintiffs to contaminated air while being used under intended or foreseeable conditions.

50. As a direct and proximate cause of the aforementioned negligence of AIRBUS, Plaintiffs,

LUCY MAYORGA and ADRIANA MORAVCIK suffered injury including but not limited to serious physical and mental injury, past and future medical expenses, loss of employment benefits, past and future wage loss including lost earning capacity, past and future pain and suffering, past and future emotional distress, past and future loss of enjoyment of life, past and future physical and mental disability, trauma, and embarrassment.

WHEREFORE, LUCY MAYORGA and ADRIANA MORAVCIK, demand judgment for compensatory damages, punitive damages and costs against AIRBUS, and further demand trial by jury of all issues so triable as a matter of right.

### COUNT II – STRICT LIABLITY

51. Plaintiffs hereby allege and incorporate paragraphs 1-46 above, by reference herein.
52. At all times material to this cause of action, AIRBUS designed, developed, manufactured, assembled, tested, marketed, distributed, sold, and placed into the stream of commerce aircraft, including the Airbus A319-112 aircraft that is the subject of this lawsuit.
53. At all times material to this cause of action, the aircraft in question, and/or its component parts, were unreasonably dangerous and defective to the users of the aircraft in one or more of the following ways, and/or inadequate instructions and warnings were provided to eliminate the unreasonable danger posed to users:
    a. The subject aircraft's environmental control system, bleed air system, air delivery system, recirculated air filtration system, and ventilation system in that the systems allowed air contaminated with hazardous substances, including vaporized and/or pyrolyzed engine oil and/or hydraulic fluid to enter the breathing zone within the subject aircraft under normal operating conditions and without detection or removal.
    b. The subject aircraft lacked a filter or filters to prevent or minimize the danger of

    exposure to contaminated bleed air.

    c. The subject aircraft lacked an air supply contamination detection system, sensors, or filters to detect, reduce and/or eliminate the danger of exposure to contaminated bleed air.

    d. The subject aircraft was not constructed in a reasonably safe condition as an ordinary consumer would expect when used as intended.

54. AIRBUS is in the business of selling aircraft, including the Airbus A319-112 aircraft that is the subject of this lawsuit.

55. The unreasonably dangerous defects were present in the subject aircraft when it was placed into the stream of commerce by AIRBUS and the subject aircraft did not undergo material change or alteration up to and including the time of the subject incident.

56. As a direct and proximate result of the foregoing, AIRBUS is strictly liable to the Plaintiffs for damages.

57. Plaintiffs, LUCY MAYORGA and ADRIANA MORAVCIK, suffered injuries including but not limited to serious physical and mental injury, past and future medical expenses, loss of employment benefits, past and future wage loss including lost earning capacity, past and future pain and suffering, past and future emotional distress, past and future loss of enjoyment of life, past and future physical and mental disability, trauma, and embarrassment.

    WHEREFORE, LUCY MAYORGA and ADRIANA MORAVCIK, demand judgment for compensatory damages, punitive damages and costs against AIRBUS, and further demand trial by jury of all issues so triable as a matter of right.

## COUNT III – LOSS OF CONSORTIUM

58. Plaintiff, MILAN MORAVCIK, hereby alleges and incorporates paragraphs 1 – 46 above, by

Page 13 of 14

reference herein.

59. As a proximate result of the injuries and losses sustained by Plaintiff, ADRIANA MORAVCIK, her spouse, MILAN MORAVCIK has suffered, and will continue to suffer, the lose of love, companionship, affection, society, consortium, comfort, marital relations, services and support which he previously received from his spouse.

WHEREFORE, Plaintiff, MILAN MORAVCIK demands judgment for compensatory damages, punitive damages and costs against AIRBUS and further demands trial by jury of all issues so triable as a matter of right.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all issues so triable as a matter of right.

LEOPOLD~KUVIN, P.A.
2925 PGA Boulevard
Suite 200
Palm Beach Gardens, FL 33410
(561) 515-1400
(561) 515-1401 (facsimile)

By:_____
THEODORE LEOPOLD, Esq.
Florida Bar No.: 705608
ADAM J. LANGINO, Esq.
Florida Bar No.: 0031368

**JS 44** (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed**

FILED ELECTRONIC
Oct. 6, 2009
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS
Lucy Mayorga, individually, Adriana Moravcik and Milan Moravcik, individually, and as husband and wife

## DEFENDANTS
Airbus S.A.S., a foreign corporation, and foreign corporation

(b) County of Residence of First Listed Plaintiff: **Nassau**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Theodore J. Leopold of Leopold Kuvin, P.A.   561-515-1400
2925 PGA Boulevard, Suite 200
Palm Beach Gardens, FL 33418

Attorneys (If Known)

(d) Check County Where Action Arose: ☐ MIAMI-DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☐ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

09 CV 61596 COHEN / SELTZER

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☑ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☑ 365 Personal Injury - Product Liability |  | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  | ☐ 340 Marine | ☐ 660 Occupational Safety/Health |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / PERSONAL PROPERTY / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / Habeas Corpus: ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  |  | ☐ 871 IRS—Third Party 26 USC 7609 |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | IMMIGRATION |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)
☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ☐ NO   b) Related Cases ☐ YES ☐ NO
JUDGE _____   DOCKET NUMBER _____

## VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332; Personal injury/product liability arising from Airbus aircraft.

LENGTH OF TRIAL via **14** days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD
DATE **10-6-09**

FOR OFFICE USE ONLY
AMOUNT **350.00**   RECEIPT # **726401**   IFP _____